UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JASON J. LIPSCOMB,

                              Petitioner,

-vs-                                                    Case No.  8:06-cv-58-T-17EAJ

SECRETARY,  DEPARTMENT  OF
CORRECTIONS,

                              Respondent.

_____/

## **ORDER**

This cause is before the Court on Petitioner Jason Lipscomb's 28 U.S.C. § 2254

petition for writ of habeas corpus.  Lipscomb challenges his conviction and sentence

entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida.[1] A review

of the record demonstrates that, for the following reasons, Lipscomb's petition must be

**denied.**

Background

Lipscomb was charged in case no. CRC01-17697CFANO with two counts of lewd

or lascivious Battery on a child 12 years of age or older but less than 16 years occurring

between September 14-15, 2001, in violation of section 800.04(4), Florida Statutes. On

March 11, 2003, Lipscomb, represented by retained counsel, appeared before the

---

[1] His petition also refers to his judgment imposed upon revocation his probation on various drug
charges. However, he does not explicitly seek to upset said judgment through any ground in the petition,
although the revocation outcome was also built into the plea terms on the two lewd battery offenses.

Honorable R. Timothy Peters, and entered a negotiated plea of nolo contendere as charged in return for a sentencing cap of the minimum sentence called for by the state's sentencing guidelines in Lipscomb's case.

Sentencing proceedings were conducted on April 13-14, 2003. Lipscomb was adjudicated guilty of each count and sentenced on each to 144.8 months prison, to run concurrently with each other. Pursuant to the plea terms, Lipscomb's probation granted in case no. CRC002-1159CFANO for his sale and possession of methamphetamine and sale of a counterfeit substance was revoked. An aggregate sentence of five years prison was imposed in that case, to run concurrently with his 114.8 month prison sentences.

In a sworn document filed April 29, 2003, the victim, professing she wished to recant her original statement, offered that she and Lipscomb did not engage in any sexual activity as the state alleged. Resp. Ex. 1, V 1 R 27. Pointing to this document, Lipscomb, through his retained trial counsel, filed a motion to set aside the plea under Florida Rule of Criminal Procedure 3.170(l) under case CRC01-17697CFANO. He also sought therein to set aside his revocation sentence. Resp. Ex. 1, V 1 R 31-33. Lipscomb filed his own pro se motion dated May 6, 2002, seeking to withdraw the plea in case no. CRC01-17697CFANO on grounds of ineffective assistance of trial counsel. Resp. Ex. 1, V 1 R 35-38.

Following preliminary proceedings on July 7, 2003, the plea court conducted an evidentiary hearing on July 21, 2003, on Lipscomb's request to withdraw his plea in case no. CRC01-17697. The victim acknowledged leaving a recorded message for Lipscomb's counsel indicating she would like to have her deposition taken because she wished to state Lipscomb did not have any sexual contact with her. Resp. Ex. 1, Supp, R 158-160. The

victim also recalled sending the document which stated she never had sex with Lipscomb. Resp. Ex. 1, Supp R 160. Although the victim maintained she signed the document which contained the word perjury, she did not understand what "perjury" meant and she could not say if the document used the words "recant" and "coerced." Resp. Ex. 1, Supp R 160-162. The victim admitted one of Lipscomb's friends helped prepare the document. Resp. Ex. 1, Supp R 163.

When asked why she did not originally tell the truth about the allegations charged against Lipscomb, the victim claimed she was under a lot of pressure at that time because of drug problems. Resp. Ex. 1 Supp, R 160. On cross-examination, the victim stated she did not really know why she reported having sex with Lipscomb but was under pressure from her friends who did not like him, as well as the officers who came to her house at two o'clock in the morning. Resp. Ex. 1 R 1 T-3, Tr. 9-10. She did not, however, relate any coercive acts by police or another. Regarding Lipscomb as a friend, the victim admitted she did not want to get him in trouble. Resp. Ex. 1 T-3, Tr. 13. The victim had a prior felony conviction and was in juvenile confinement at the time of the hearing. Resp. Ex. 1, V 1 T-3, Tr. 14. Contrary to the signed statement, the victim stated she was not threatened by police at the time she made her allegations against Lipscomb. Resp. Ex. 1, R 1 T-3, Tr. 14-15.

Upon inquiry by the state court, the victim acknowledged she did not write the document which purported to exonerate Lipscomb. Resp. Ex. 1, Supp 167-168, but claimed she could not remember the names of those persons who actually wrote the sworn document. Resp. Ex. 1, Supp 168.

The trial court did not credit the victim's testimony/recantation. Observing there was no evidence the victim was threatened or coerced to give her original statement as alleged in the affidavit, Resp. Ex. 1 Supp R 179, the trial court denied Lipscomb's motion to withdraw his plea. Resp. Ex. 1, Supp R 181. A written order followed. Resp. Ex. 1, V 1 R 49.

Lipscomb, represented by his same retained counsel, prosecuted a direct appeal, urging the trial court abused its discretion in denying his request to withdraw his plea. Following briefing and oral argument, the state district court on June 18, 2004, per curiam affirmed without written decision in case no. 2D03-3609. *Lipscomb v. State*, 880 so. 2d 1225 (Fla. 2d DCA 2004)[table]. Lipscomb did not seek rehearing; nor did he file a certiorari petition in the United States Supreme Court.

Lipscomb filed a pro se petition for writ of habeas corpus dated August 19, 2004, alleging he was denied the right to conflict free counsel on his motion to withdraw plea and in his direct appeal. Shortly thereafter, on September 21, 2004, the petition was denied without prejudice. *Lipscomb v. Crosby*, case no. 2D04-3762 (Fla. 2d DCA 2004).

By then, Lipscomb had filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 dated August 18, 2004 in case no. CRC01-17697CFANO, in which he alleged his plea was involuntarily entered based on ineffective assistance of trial counsel. An amended rule 3.850 motion and a supplement also followed. By nonfinal order rendered December 3, 2004, the postconviction court summarily denied all but one ground containing subparts, and directed the state to respond to the remaining ground. Following Lipscomb's motion for rehearing, another addendum and the state's

response, a final denial was rendered September 17, 2004. Lipscomb appealed the adverse result. On September 2, 2005, the state district court per curiam affirmed the summary denial without written decision in case no. 2D05-1508. *Lipscomb v. State*, 915 So. 2d 1209 (Fla. 2d DCA 2005)[table]. Following denial of rehearing, the mandate issued October 26, 2005.

By then, Lipscomb had filed another pro se habeas petition dated January 17, 2006. A court-directed response by the State followed. The state district court of appeal denied the petition on July 6, 2006 in case No. 2D06-275. *Lipscomb v. State*, 939 So. 2d 104 (Fla. 2d DCA)[table].

Lipscomb timely filed a pro se 28 U.S.C. § 2254 petition dated January 5, 2006, raising two grounds of ineffective assistance of counsel.

Standards of Review

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*,  279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

Discussion

In his two grounds, Lipscomb contends his trial counsel rendered ineffective assistance. In ground one, he claims his counsel misadvised him as to the length of his sentence. In ground two, he charges that counsel did not conduct a meaningful investigation. He faults counsel for not interviewing the victim and accuses counsel of operating under a misunderstanding of what the victim would have said if she had been deposed.

These grounds mirror claims in Lipscomb's rule 3.850 application(s) which were summarily denied, and the summary denial appealed. Notwithstanding, the proposed instance raised in ground two allegedly occurred prior to entry of Lipscomb's negotiated plea, and were waived by entry of Lipscomb's voluntary plea. Accordingly, he cannot obtain federal review of ground two.

Waiver of Antecedent Non Jurisdictional Claims

The Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Following the entry of a guilty plea on the advice of counsel, the scope of a federal habeas corpus inquiry is limited to whether the plea was voluntarily and intelligently made; an independent inquiry as to the existence as such of any antecedent constitutional infirmity is improper. *Tollett, supra* at 266. Only an attack on the voluntary and knowing nature of the plea can be sustained. *United States v. Broce*, 488 U.S. 563 (1989)("when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.); *Matthew v. Johnson*, 201 F.3d 353, 364 (5th Cir.)(noting longstanding rule that valid guilty plea bars habeas review of nonjurisdictional claims alleging antecedent violations of constitutional rights), *cert. denied*, 531 U.S. 830 (2000).[2]

In Lipscomb's case, the factual underpinnings of ground two are alleged to have occurred, if at all, prior to entry of his plea rather than contemporaneously with it. Lipscomb does not dispute he was aware prior to entry of his plea of the extent of his counsel's investigation of the state's evidence and potential defenses. Nor does he dispute he knew, prior to his plea, that his counsel had set the victim for deposition and that the deposition had not been taken. Lipscomb's knowing embrace of the favorable plea terms cut off any

---

[2] A nolo contendere plea stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36 (1970); *see also, Vinson v. State*, 345 So.2d 711, 715 (Fla. 1977)(nolo contendere plea admits facts for purpose of pending prosecution and to that extent has same effect as guilty plea insofar as it gives court power to punish).

further inquiry into the state's proof or potential defenses. *See Neely v. Pennsylvania*, 411 U.S. 954, 957 (1973)("A guilty plea constitutes a waiver of the fundamental rights to a jury trial ...and to be convicted by proof beyond all reasonable doubt.").

The primary challenges left open in federal habeas corpus after a guilty plea is the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead. *Hill v. Lockhart,* 474 U.S. 52, 56-57 (1985); *Tollett*, 411 U.S. at  267. None of Lipscomb's assertions in ground two falls within the ambit of an involuntary plea challenge that would survive waiver by plea. Lipscomb does not specifically claim his counsel or the state court coerced him to accept the plea terms. Lipscomb accepted the favorable plea terms freely and voluntarily with full awareness of his counsel's actions concerning the victim. As a result of his entry of the free and voluntary plea, Lipscomb waived further inquiry into the victim's tenacity with regard to the accusations.

The waiver effect of Lipscomb's voluntary plea applies as well to his claim of ineffectiveness of counsel in ground two because the claim does not implicate the validity of the plea itself. *See, United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir.)(voluntary guilty plea waives all nonjurisdictional defects in proceedings against the defendant, including claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary), *cert. denied*, 531 U.S. 919 (2000). Since Lipscomb does not allege facts showing his plea was involuntary in ground two, his

ineffectiveness claim related to his pre-plea nonjurisdictional claims are also waived and precluded by entry of the negotiated plea.[3]

Even if his claims of ineffective assistance of counsel were reached to the extent raised as such in his rule 3.850 motion, and the adverse result appealed, Lipscomb fails to meet his burden under the AEDPA standards. A challenge to a nolo contendere or guilty plea based on a claim of ineffective assistance of counsel is reviewed using the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). It is objectively reasonable to conclude, with regard to each of Lipscomb's claims of attorney ineffectiveness, Lipscomb does not set forth a sufficient basis to meet either prong of *Strickland.*

First, the petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment. Counsel's performance is constitutionally deficient when it "[falls] below an objective standard of reasonableness." *Id.* at 688.

Judicial scrutiny of a counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

---

[3] *See also e.g., Pittman v. Carey*, 2005 U.S. Dist. LEXIS 12446 (D. Cal. 2005)(petitioner's claims his counsel was ineffective based upon a number of alleged pre-plea actions -- including counsel's failure to request a polygraph test, adequately cross-examine witnesses at preliminary hearing, and failure to file motions to dismiss claims, suppress evidence, or to reduce bail --occurred prior to entry of the plea agreement; upon entering the plea agreement, petitioner waived right to raise these issues in federal habeas petition as basis for claim of ineffective assistance of counsel); *see also, e.g., Baker v. State,* 879 So. 2d 663, 664 (Fla. 4th DCA 2004)(affirming denial of movant's rule 3.850 claim his trial counsel was ineffective for not attacking credibility of codefendant, holding guilty plea cut off inquiry into all issues arising prior to plea and further attack on credibility of codefendant was rendered pointless by plea).

perspective at the time. *Strickland,* 466 U.S., at 689. The reviewing court must indulge the strong presumption that counsel's performance was reasonable and counsel made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The Supreme Court has declined to articulate specific guidelines for appropriate attorney conduct and instead emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)(citing *Strickland* at 688).

Second, the petitioner must show that deficient performance prejudiced the defense. *Strickland*, at 693-96. To show prejudice in the context of a plea, the defendant must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and [would have] insisted on going to trial." *Hill*, 474 U.S. at 59. Strickland counsels that if a defendant fails to make a proper showing under one of the prongs, the court need not consider the other prong. *Id.*, 466 U.S. at 697.

In Lipscomb's case, the relevant inquiry is whether it is objectively reasonably to deny his claims based on his allegation and the present record under the *Strickland/Hill* framework. The state postconviction court's denial of his claim of ineffectiveness of counsel, followed by a silent affirmance of the state district court of appeal, was not objectively unreasonable.

### Ground One

In ground one of the instant petition, Lipscomb accuses his counsel of rendering misadvice as to his sentencing outcome. The thrust of this claim is that counsel purportedly told him that if the victim was not deposed, he would receive a downward departure

sentence*, i.e.*, one below the state's sentencing guidelines, and in particular, community control, upon entry of a nolo contendere plea.

The postconviction court found the state record conclusively refuted his claim of omission. It is objectively reasonable to conclude based on the state record that Lipscomb's plea was not "infected" by any promise he would receive a downward departure sentence.

At the plea hearing, the state judge made clear the maximum penalty would be the bottom called for by the state's sentencing guidelines and also that the sentences in his cases [his 2001 case and his case in which he violated his probation] would run concurrently. Resp. Ex. 1, Supp R 65-66. When presented with uncertainty only over whether Lipscomb would be exposed to additional prosecution for sexual acts occurring between April and October of the prior year [2002], the state judge halted the colloquy to allow the parties to resolve the matter. Resp. Ex. 1 Supp R 66-68. Upon resuming the colloquy, the state judge confirmed there was no understanding on whether the additional prosecution would be filed. Resp. Ex. 1, Supp R 68. The parties agreed such was not a concern of the plea agreement. Id. In other words, the parties were in agreement to omit the matter as a plea condition.

The state court then reinforced that the agreed-upon disposition was for an "open" plea "an incarceration sentence that would not exceed the bottom of the guidelines." Resp. Ex. 1, Supp R 69. The 12-year figure was stricken from the plea form and the court made clear the "bottom" of the guidelines was what was correct [under state law]. *Id.* Asked if that was agreeable, Lipscomb responded, "Yes." *Id.*

Ignoring this attestation, Lipscomb points to the state court's preceding inquiry into whether there was anything promised other than what was in the written plea agreements. Then, Lipscomb points out his plea form made reference to downward departure. Doc. No. 1 at 12. He omits that the plea form included the verbiage " possible downward departure." Based on such qualifying language, it is objectively reasonable to conclude counsel had not misadvised him in any regard with regard to his sentencing consequences. The reasonableness of this conclusion is illuminated by Lipscomb's own assertions in his amended rule 3.850 application which referred to a plea strategy based on a possible downward departure, as the postconviction court observed in the nonfinal rule 3.850 order. Resp. Ex. 9.

Moreover, Lipscomb's rule 3.850 motion did not dispute he was put on notice by the court's remarks he could receive that "bottom" figure and that such "bottom" was a prison sentence. Nor did he allege his counsel ever advised him to the contrary once the "cleansing" admonitions were given him at the plea hearing. Thus, even if Lipscomb could somehow prove any antecedent erroneous advice by counsel, nonetheless, it can be reasonably concluded such advice was cured by the remarks of the state court during the colloquy. Then, based on the record and his own allegations, it can be reasonably concluded any purported erroneous pre-plea advice was corrected, and as corrected, the advice did not constitute deficient performance.

This is not a case in which a state prisoner claims to have heeded affirmative misadvice and laments he was not otherwise accurately informed of his plea consequences by the state judge. This is a case in which a state prisoner claims an off-record promise

infected a plea where the record establishes the plea was entered with correct information. Applying the AEDPA standards to the state decision, It is objectively reasonable to conclude that the trial court's thorough inquiry of Lipscomb clarified and/or cured any ambiguity in the plea form, and removed any potential claim of Lipscomb's misunderstanding of the sentencing options. Once the trial court's "cleansing" ministrations were applied, and Lipscomb confirmed his understanding of his sentencing exposure, Lipscomb could no longer fall back on any claim of ambiguity in the plea terms or misadvice about his sentence so as to void his plea.

Even if Lipscomb's bald collateral allegations of misadvice could manage to overcome the presumption of verity accorded his solemn declarations made in open court, *see Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (holding that "solemn declarations in open court carry a strong presumption of verity [and] the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal"), he is still left with the corrective actions of the plea court in disabusing him of any suggestion that the sentence was settled. Thus, even if he was concealing any purported promise, the thorough plea proceedings provide sufficient support for the objectively reasonable conclusion that Lipscomb cannot meet his burden under the deficiency prong of Strickland because he was properly advised of the consequences of his plea by the state court.

Alternatively, the claim can be denied under the prejudice prong without reaching the deficiency prong. Lipscomb's allegations do not suffice to demonstrate, even if proven, there is a reasonable probability that, but for counsel's alleged errors, he would not have entered his plea and would have insisted on going to trial. *Hill v. Lockhart, supra.* Lipscomb

undeniably was made aware through the state plea court's remarks that his sentence was yet to be determined, with only a cap on a prison sentence, contrary to what he claims his counsel purportedly led him to believe. Because Lipscomb endorsed the plea agreement after being given accurate information during the plea colloquy, he cannot show he would not have pled but for counsel's alleged misadvice.

In addition, his plea terms provided him the benefit of seeking mitigation of his sentence. Under the circumstances, it is objectively reasonable to conclude Lipscomb's assertions are insufficient to show he would not have entered his plea had his trial counsel not rendered the alleged pre-plea advice. Accordingly, the state decision on his claim resulted in a reasonable application of *Strickland* and *Hill* and their progeny and a reasonable determination of the facts in light of the evidence.

When viewed as an involuntary plea claim, the same result obtains. The standard for determining the validity of a plea is whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The voluntariness of a plea is determined by considering all of the relevant circumstances surrounding it. *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469 (1970). A plea qualifies as intelligent, furthermore, when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998)(quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).

A reviewing federal court may set aside a state court plea only for failure to satisfy due process. If a defendant understands the charges against him, understands the consequences of the plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal review. *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991). A nolo contendere plea stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. at 35-36.

Lipscomb's collateral assertions do not overcome the presumption of correctness of his assurances to the state court as to his understanding of his sentencing exposure. To hold otherwise would be to treat a state judge's voluntariness inquiry such as undertaken in Lipscomb's case a futile act or nullity. The AEDPA does not contemplate that result.

Even if Lipscomb could show he was under the impression he was going to receive a downward departure sentence when he walked into the courtroom to enter his plea, nonetheless, he is left with his unequivocal responses to the plea court's probing of Lipscomb's understanding of the plea terms. A guilty plea is not voluntary "in a constitutional sense" unless "the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Franklin v. Hightower*, 215 F.3d 1196, 1200 (11th Cir. 2000)(citing *Henderson v. Morgan,* 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady,* 312 U.S. at 334). Lipscomb proceeded with the plea with knowledge of his sentencing exposure and assured the state court in that regard. In such circumstances, due process is satisfied.

The thorough plea proceedings provide sufficient support for the objectively reasonable conclusion that Lipscomb entered his plea freely and voluntarily with full

awareness of the nature of the charges and consequences of his plea. Thus, the state

decision resulted in a reasonable application of *Brady* and *Boykin* and their progeny.

Ground Two

In ground two, Lipscomb faults counsel for not deposing the victim. According to

Lipscomb, had his trial counsel interviewed the victim, his counsel would have found the

victim did not support the state's accusations. Lipscomb asserts that under such

circumstances, he would have insisted on a jury trial. In denying his rule 3.850 motion, the

state postconviction court held, in relevant part:

> Counsel was not deficient because he could not have foreseen at the
> change of plea hearing that the victim intended to recant her prior statements
> that she had sexual relations with Defendant at her expected deposition or
> at a later date. The record also indicates that counsel had good cause for not
> taking the victim's deposition since once Defendant did so, the State would
> not agree to a bottom of the guidelines disposition. *See Exhibit G: Excerpt of
> Motion to Withdraw Plea Hearing, July 21, 2003, p. 24*. Defendant also
> cannot show how he was prejudice[d], that his attorney's failure to depose
> the victim affected the voluntariness of his decision to plea no contest. *Hill v.
> Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *see
> also Davis v. State*, 697 So. 2d 957 (Fla. 2d DCA 1997). Defendant could not
> have known that the victim would recant her statements, and he
> acknowledges in his motion at page 7 that he knew counsel had not taken
> her deposition at the time of the change of plea hearing, and nonetheless
> pled. This claim is denied. . . . .

(Resp. Ex. 11, at p. 4)

The state decision resulted in an objectively reasonable application of *Strickland*'s

deficiency prong. Lipscomb does not overcome the strong presumption that trial counsel's

performance concerning the state's plea offer in relation to the alternative of pursuing the

victim's account was in the exercise of reasonable professional judgment. *Strickland*, 466

U.S., at 690.  He fails to show that no reasonably competent attorney at the time could

have recommended Lipscomb forego the deposition process and accept the favorable plea terms.

Lipscomb points to his counsel's arguments in the motion for plea withdrawal [prior to his direct appeal] to suggest his counsel operated under a misunderstanding. Ostensibly to lend support for this bald assertion, Lipscomb takes out of context his counsel's argument, "At that time, I don't know why -- as you heard the alleged victim tell you here today, she was waiting for her deposition to be taken so that she could set this matter straight...." Pet. Ex. L. In context, however, it is apparent that his counsel was merely characterizing as inexplicable the state's plea stance, namely, that the plea offer would not stand if counsel decided to pursue deposing the victim and that under the circumstances, Lipscomb should be allowed to withdraw the plea based on the victim's retreat from her initial statement.

Moreover, Lipscomb cannot rely on the victim's post-plea retreat from her initial account of the crime. Lipscomb's theory is that if counsel had not adopted the plea strategy he did, and instead had deposed the victim, counsel would have presented an adequate motion that would have allowed Lipscomb to withdraw his plea. However, Lipscomb does not overcome the presumption of correctness of the state court's factual findings in regarding the withdrawal of the plea. 28 U.S.C. § 2254(e)(1); *see also, Marshall v. Lonberger*, 459 U.S. 422, 431-32 (1983)(pre-AEDPA case recognizing that state court's factual determinations fairly supported by record regarding voluntariness of guilty plea in prior proceeding were entitled to presumption of correctness because findings were based on state court's determination of defendant's credibility during his testimony before court).

Having failed to establish, as a threshold matter, his underpinnings for his claim of ineffectiveness of counsel, *i.e,* the sexual contact did not occur as the victim originally maintained, Lipscomb cannot show any deficiency in counsel's recommendation to forego the proposed deposition.

Counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. *Stano v. Dugger*, 921 F.2d 1125, 1151 (11th Cir. 1991)(internal citation omitted). *See also, Halbert v. Michigan,* 125 S. Ct. 2582, 2598 (2005)(When a defendant pleads in open court, there is less need for counsel to develop the record and refine claims to present to an appellate court). Moreover, "[t]he defense of a criminal case is not an undertaking in which everything not prohibited is required. Nor does it contemplate the employment of wholly unlimited time and resources." *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992), *cert. denied*, 510 U.S. 829 (1993).

In Lipscomb's case, it is objectively reasonable to conclude, based on the record, that his counsel was aware of the facts undergirding the state's case and evaluated Lipscomb's options and advised him as to the merits the options. The decision not to explore further whether the victim would stand by the accusations in a deposition fell within the wide range of reasonable professional assistance, particularly where the favorable plea terms would have evaporated upon issuance of a deposition subpoena.

Lipscomb does not seriously dispute that his trial counsel had failed to address Lipscomb's claim that Lipscomb did not commit the alleged acts with Lipscomb, or that he failed to evaluate pursuing the victim's account of the crime. Lipscomb entered his plea with full awareness that discovery had not been completed and by his plea he was waiving potential defenses that any future investigation might produce. (Ex. 1) Lipscomb's acceptance of the favorable plea bargain was an informed election to forego further pursuit of his known claim that the victim's accusations were not true. Counsel cannot be considered ineffective where, as here, a competent defendant makes the informed choice not to put on a defense and instead plead guilty to the charges. *See Strickland*, 466 U.S. at 690-92 (counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by him).

This claim can be disposed of on the prejudice prong without addressing the deficiency prong. A mere allegation by the defendant that he would have insisted on going to trial, although required, is insufficient to establish prejudice. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001)(defendant's mere allegation that he would have insisted on trial but for counsel's errors, although necessary, is ultimately insufficient to entitle him to relief on an ineffective assistance claim; rather; Court looks to factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial); *United States v. Arvantis*, 902 F.2d 489, 494 (7th Cir. 1990).

Lipscomb's declarations are insufficient to rebut the "strong presumption of verity" afforded his solemn declarations in open court. *Blackledge v. Allison*, 431 U.S. 63, 73-74, (1977). Lipscomb does not reconcile his self-serving statement he would have insisted on

-19-

a jury trial with his declarations in his plea form, including inter alia, that he was giving up his rights attendant with a jury trial, including the right to require the state to prove the charges beyond a reasonable doubt, and he did not require the state to tell the court the facts upon which the charges were based before the plea was accepted. In addition, Lipscomb does not set forth objective facts which would explain why he advised the plea court he was satisfied with his counsel's advice. Resp. Ex. 1, Supp R 64.

His declaration that he would have tried his case rather than pled but for the alleged claims of omission of counsel is also contravened by the undeniable fact he found favorable, at the time of the plea, the built-in cap which shielded him from a more severe prison sanction than he would have otherwise faced had he been convicted after a jury trial. Further, he obviously desired to embrace the added benefit of the open plea customized with a low-end cap so as to allow him to seek a downward departure outcome. That the plea strategy did not ultimately yield a downward departure sentence does not undercut the plea's voluntariness.

Lipscomb takes the collateral view his victim would have recanted and counsel should have known that. He does not account for the discrediting of her recantation. But even that aside, Lipscomb does not point to any objective facts which would show, even if proven, that he was willing to take a chance on the victim's recantation when the state had made a favorable offer for entering a plea. Because he does not set forth a sufficient basis which would show there was a reasonable probability he would have declined the favorable plea terms and risked a more serious sentencing outcome upon conviction after a jury trial, it is objectively reasonable to deny his claim under *Strickland*'s prejudice prong.

To recap, even if Lipscomb's ineffective assistance claim survives the waiver associated with a voluntary plea, he is not entitled to federal habeas relief because Lipscomb has not affirmatively shown deficient performance or resulting prejudice. Because counsel's alleged ineffectiveness occurred prior to Lipscomb's plea and does not affect the jurisdiction of the trial court or the voluntariness of the pleas, Lipscomb's claim was waived by entry of his knowing, intelligent, and voluntary plea.

The state record shows that Lipscomb was properly and fully informed regarding the plea terms and freely and voluntarily chose to enter his plea. Lipscomb's attestations in his plea form, as well as his sworn assurances to the plea court, bear out that he understood the nature of the charges to which he was pleading, the rights attendant with trial he was giving up, and the consequences of his plea. His plea was a voluntary and intelligent choice among the alternative courses open to him. It follows that Lipscomb's voluntary plea waived of his claim of ineffective assistance of counsel presented in ground two. *E.g., Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983)(".... because we have already held Smith's plea to be voluntary, it follows that his claims of ineffectiveness unrelated to the guilty plea are waived -- e.g., Johnson's alleged failure to review the prosecutor's file to verify laboratory test results that the substances Smith delivered were in fact heroin and cocaine; Johnson's alleged failure to investigate witnesses and the legality of Smith's arrest; or any other alleged failure of Johnson to find "holes" in the government's case against Smith.")

Additionally, § 2254(e)(2) bars a federal district court from conducting an evidentiary hearing or otherwise permitting an expansion of the evidentiary record in support of a habeas claim if the petitioner failed to develop the factual basis for his claim in state court.

Diligence for purposes of § 2254(e)(2) depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in the state court. *See Williams v. Taylor*, 529 U.S. 420, 435 (2000).

Lipscomb was afforded ample opportunity to develop the underpinnings for his plea withdrawal endeavor and he failed to establish a factual basis. In his rule 3.850 motion, he did not plead sufficient facts showing his plea was involuntary based on counsel's performance. He is now precluded by § 2254(e)(2) from developing any new factual assertions in that regard not presented the state courts in a timely manner. And even if § 2254(e)(2) does not preclude a federal evidentiary hearing, Lipscomb nonetheless is not automatically entitled to a hearing.[4]  It would still be appropriate to deny him a hearing if such would not assist in resolution of his claims.

In order to obtain an evidentiary hearing, the petitioner must demonstrate he would be entitled to habeas relief on his claim if his factual allegations are proven. *See Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002)("in order for Breedlove to obtain an evidentiary hearing, he must demonstrate that he would be entitled to habeas relief on his *Brady* claim if his factual allegations are proven"). This determination is circumscribed by the AEDPA's highly deferential standards. *See Breedlove*, 279 F.3d at 960 ("In the post AEDPA era, we do not conduct an independent review of claims that have been addressed on the merits by the state courts. The relevant standard for federal habeas review of such claims is governed by 28 U.S.C. § 2254(d)(1)....") Lipscomb is not entitled to federal relief

---

[4]  *See also Bowling v. Parker*, 344 F.3d. 487, 512 (6th Cir. 2003)(recognizing "the fact that Bowling is not disqualified from receiving an evidentiary hearing under § 2254(e)(2) does not entitle him to one"); *McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998) (Consistent with AEDPA's goal of streamlining the habeas process, § 2254(e)(2) specifies situations where evidentiary hearings are allowed, not where required).

on either of his grounds. His factual underpinnings for such, even if, proven, would not establish that the state postconviction court acted contrary to, or unreasonably applied, clearly established federal law when it denied his claims without holding an evidentiary hearing. *See Breedlove*, 279 F.3d at 960 ("While Breedlove's diligent efforts to obtain an evidentiary hearing in state court mean that a federal evidentiary hearing is not barred by § 2254(e)(2), it would still be appropriate to deny him an evidentiary hearing if such a hearing would not assist in the resolution of his claim.")(internal citation omitted).

**Accordingly, the Court orders:**

That Lipscomb's petition is denied.  The Clerk is directed to enter judgment against Lipscomb and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v.*

*Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 14, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Jason Lipscomb